# In the United States Court of Federal Claims

Case Number 08-498 C
Filed: October 13, 2011
FOR PUBLICATION

| | | |
|---|---|---|
| **WILLIAM E. BRANCH**, | * | |
| | * | |
| *Plaintiff*, | * | Equal Pay Act, 29 U.S.C. § 209(d), |
| | * | pay disparity, differentiating task, |
| v. | * | 29 U.S.C § 255(a), discrimination, |
| | * | gender, work equal in skill, similar |
| | * | duties. |
| **THE UNITED STATES**, | * | |
| | * | |
| *Defendant*. | * | |

### OPINION AND ORDER

**SMITH,** Senior Judge:

     This case arises out of an alleged violation of the Equal Pay Act, 29 U.S.C. § 209(d) ("EPA"), in which the Plaintiff, Mr. Branch, claims that he is receiving disparate pay on the basis of gender. While the evidence clearly shows that Mr. Branch was a very good and highly motivated employee, Ms. Navarro's disparate pay grade was not the result of sex discrimination. While the agency engaged in a bit of bureaucratic disingenuousness, aimed at giving Ms. Navarro tasks that would rationally justify her higher grade, they did not violate any statutes or rules. The evidence indicates after she was removed as supervisor she was kept at GS14 because the statute kept her grade for 2 years and then it would have involved a lot of legal hassle to downgrade her position. Thus, it was far simpler to keep her at GS14 and give her some new duties that were at best marginally different from the GS13 duties.

     The Court does not sit as an umpire of good or bad administrative practice. Its job is to enforce rights created by law. Here, unfortunately for Mr. Branch this practice, which he may have justifiably objected to, does not violate any rights created by any statute or the Constitution.

Therefore, for the reasons set forth below, the Court hereby finds that the Government did not violate the provisions of the EPA, and, accordingly, dismisses the case. As a result, the question as to whether a two-year statute or a three-year of limitations is applicable under 29 U.S.C § 255(a) is dismissed as moot.

## I.   Procedural History and Background

Mr. Branch, an LMR Specialist at the Bureau of Prisons has brought suit alleging that Ms. Ruby Navarro, a female comparator, is compensated at a higher rate for performing similar work. Pl.'s Mem. 10. In 2000, both Mr. Branch and Ms. Navarro applied for a GS-14 Supervisory position. Joint Stip. ¶ 18. This position was awarded to Ms. Navarro in October 2000. Pl.'s Mem. 2. Four years later, however, Ms. Navarro was re-assigned as a Lead Specialist and was allowed to maintain her GS-14 pay grade. *Id.* Mr. Branch contends that since Ms. Navarro's position was re-assigned to that of Lead Specialist, she has been performing the same work as other LMR Specialists, and Mr. Branch, in particular. *Id.* at 2-3. Thus, Mr. Branch contends that there is no reason to justify the pay disparity.

In response to Mr. Branch's allegations, the Government filed with this Court a Motion for Summary Judgment and a Motion for Partial Dismissal. In the Motion for Summary Judgment, the Government argued that Mr. Branch's allegations lacked merit because his responsibilities were not the same as those of Ms. Navarro. The Government further noted that the majority of LMR Specialists are female, and thus, Mr. Branch's allegations lacked merit. The Government also argued in its Motion for Partial Dismissal that all claims that arose two years prior to the date that the Complaint was filed be dismissed pursuant to 29 U.S.C § 255(a). In light of these two motions, the Court held oral arguments on October 22, 2010. After which the Court determined that there were questions of material fact that precluded judgment on either Motion. As such, a trial was scheduled.

## II.   Trial testimony

Trial was held in Phoenix, Arizona on May 17-19, 2011, to determine whether the Government violated the EPA. Eight witnesses testified at trial.

In order to establish that Mr. Branch is receiving disparate pay for performing similar work as Ms. Navarro, Mr. Branch presented the testimony of the following five witnesses:

- Michael Markiewicz, Labor Management Relations Specialist.
- Betty J. Gannon, Retired LMR Specialist.
- Jennifer Montgomery, LMR Specialist.
- William E. Branch, LMR Specialist.
- Ruby Navarro, Lead Specialist.

The testimony provided by the former four witnesses alleged that since Ms. Navarro, the female comparator, was re-assigned from a supervisory position to that of a Lead Specialist, she no longer plays a role in assigning duties; does not do performance evaluations; does not meet with the LMR Specialists to discuss their workload or concerns; does not re-assign cases; and until about a year ago, did not approve leave longer than three days.  Trial Tr. 34:12-23 (Markiewicz); Trial Tr. 35:7-13 (Markiewicz); Tr. 39: 25-40 (Markiewicz); Trial Tr. 40: 17-25 (Markiewicz); Trial Tr. 58:10-12 (Gannon); Trial Tr. 58:16-18 (Gannon); Trial Tr. 58:19-22 (Gannon); Trial Tr. 58:23-59:1 (Gannon); Trial Tr. 80:11-17 (Montgomery), Trial Tr. 80:18-19 (Montgomery).  Essentially, the witnesses claimed that Ms. Navarro has similar duties to the other LMR Specialists, who are paid at a lower pay grade.  Trial Tr. 78:9-13 (Montgomery); Trial Tr. 128:3-15 (Branch).  Ms. Montgomery testified, however, that approximately a year and a half ago Ms. Navarro began approving leave and performing inventory.  Trial Tr. 76:4-15.  Further, the testimony established that, similar to Ms. Navarro's duties, the LMR Specialists also assisted in training, and in completing office administrative tasks.  Trial Tr. 34:7-9 (Markiewicz); Trial Tr. 42:17-24 (Markiewicz); Trial Tr. 52:15-53:23 (Gannon); Trial Tr. 103:2-20 (Branch); Trial Tr. 104:22-105:3 (Branch).

Mr. Branch further explained that Ms. Navarro had been under investigation for misconduct and that she had lost her supervisory position due to the allegations that had been made against her.  Trial Tr. 111:3-112:10; 113:14-18.  As for the Government's explanation that the re-assignment had not been done due to the misconduct allegations but rather as a means to reduce the supervisor to staff ratio, Mr. Branch stated that these had been mere pretenses.  Trial Tr. 113:19-114:22.  Mr. Branch explained that the re-assignment had not changed the ratio.  *Id.*  Furthermore, Mr. Branch testified that there is no position description for the Lead Specialist position and that the Government increased Ms. Navarro's duties to include approving telework and reviewing settlement agreements, some of which were assigned after this trial had begun.  Trial Tr. 125:12-16; Trial Tr. 134:8-11; Trial Tr. 135:2-11.

Ms. Navarro, on the other hand, testified that her duties were different from those of the other LMR Specialists.  She asserts that, in addition to the LMR Specialist's duties, she provides private verbal feedback on evaluations and case assignments to the supervisor, is the supervisor's "go to" person, approves leave, coordinates annual training, is the point of contact for the building, and is part of the management team that updates disciplinary letters so that they are consistent with case law.  Trial Tr. 104:13-20; Trial Tr.180:5-182:10; Trial Tr. 195:23-196:2; Trial Tr. 196:11-19; Trial Tr.196:20-197:19; Trial Tr. 204:8-12; Trial Tr. 206:13-19; Trial Tr. 206:25-207:25.  Ms. Navarro further alleges that the re-assignment had been performed to lower the supervisor to staff ratio and had not been a result of the misconduct allegations made against her.  Trial Tr. 156:21-157:4.  In fact, she stated that had the re-assignment been made as a response to the misconduct allegations, then she would have been demoted.  Trial Tr. 185:13-24.  Instead, the disciplinary investigation led to a one day suspension.  Trial Tr. 184:18-21.  *See also* DX 1-3.

Consistent with Ms. Navarro's testimony and in order to establish the validity of the pay disparity, the Government presented the testimony of the following three witnesses:

- Joseph Edward Chapin, Retired former Chief of Labor Relations.
- Lynell Christina Griffith, Associate General Counsel and Ethics Officer.
- Christopher Wade, Deputy Branch Officer.

These three witnesses stated that the re-assignment had been done to reduce the ratio of supervisor to subordinate and to cut costs. Trial Tr. 223:18-224:6 (Chapin); Trial Tr. 270:1-10 (Griffith). In fact, four other employees, two of which were men, underwent a similar conversion and their pay grade remained unchanged. Trial Tr. 226:5-227:21 (Chapin). Mr. Chapin asserted that neither gender nor the allegations against Ms. Navarro played a role in the decision to carry out the conversion. Trial Tr. 229:19-21; *see also* Trial Tr. 268:7-9 (Griffith). Ms. Griffith further noted that the supervisor to staff ratio has been maintained since the reassignment occurred. Trial Tr. 278:7-15. *See also* Trial Tr. 323:8-11 (Wade).

The witnesses further testified that the position of Lead had been envisioned to be the "eyes and ears" of the office. Trial Tr. 238:13-15 (Chapin). Ms. Navarro was to provide input for the evaluations, approve leave that was under three days, monitor attendance, and provide input for case assignments. Trial Tr. 286:22 (Griffith); Trial Tr. 286:25-287:1(Griffith); Trial Tr. 286:24 (Griffith); Trial Tr. 287:1-2 (Griffith); Trial Tr. 319:2-3 (Wade); 320:10-20 (Wade); 321:9-16 (Wade). In fact, the position description of the Lead Specialist was the same as that of the Senior Labor Management Position, and, thus, Ms. Navarro had a different position description from Mr. Branch and the other LMR specialists. Trial Tr. 271:14-272:20 (Griffith); Trial Tr. 274:10-18 (Griffith). The witnesses also acknowledged that even if Ms. Navarro had not been re-assigned as Lead, but had been re-assigned as a LMR specialist, the Government would have been required by statute to keep her at the higher pay grade for two years after the re-assignment occurred. Trial Tr. 230:4-15 (Chapin).

### III. Discussion

To establish an EPA violation, a plaintiff must show (1) "past or present discrimination based on sex," and (2) that he "performed work equal in skill, effort and responsibility" to that of a comparator. *See Yant v. United States,* 588 F.3d 1369, 1374 (Fed. Cir. 2009); *Moorehead v. United States*, 84 Fed. Cl. 745, 747 (2008). Equal does not mean identical but requires that the work be substantially equal. 29 C.F.R. §§ 1620.13(a), 1620.14. Thus, the Court should focus on the job's primary duties, and not those that are merely incidental. *Cooke*, 85 Fed. Cl. at 342. In doing so, the Court should focus on the skills that are required to perform the position's function, and not merely the specific employee's ability. *Id.* Further, wage differentials can be justified when employees perform an important differentiating task, even if they do not spend large amounts of time performing that task. *See Marshall v. Dallas*, 605 F.2d 191, 195 (5th Cir. 1979); *Glenn v. General Motors Corporation,* 841 F.2d 1567 (11th Cir. 1988). If the plaintiff is

4

successful in establishing a *prima facie case*, then the Government will bear the burden to prove that the disparity falls within one of the four exceptions to the EPA. *See Corning Glass Works,* 417 U.S. 188 (1974).

In his attempt to demonstrate that the Government violated the EPA, Mr. Branch alleges that Ms. Navarro is performing the same tasks as he is, but is paid more. Trial Tr. 332:8-12. More specifically, he alleges that the pay discrepancy between him and Ms. Navarro, cannot be justified because they are both performing the "same duties with the same skill, effort, and responsibility." Trial Tr. 332:8-12. He states that the duties of Ms. Navarro are the same ones as those of Mr. Branch and the other LMR Specialists. Trial Tr. 335:6-8. He alleges that they even have the same performance standards. Trial Tr. 339:11-16. Further, he contends that the duties that the Government uses to distinguish Ms. Navarro from Mr. Branch are "not significant" and do not support the GS-14 categorization. Trial Tr. 343:24-344:8.

Mr. Branch also alleges that Ms. Navarro's reclassification was due to misconduct and that the explanation that the change from Supervisor to Lead was made to reduce the number of the supervisor ratio is "disingenuous" because the ratio was not maintained. Trial Tr. 331:17-19; Trial Tr. 333:13-22. Mr. Branch also testified that the Government's arguments are contradictory as the Government has argued both that the change was within the merit system (because it was "based upon performance and administered objectively and systematically") and, at the same time, that it was "an exception to the merit promotion procedures" and it is permissible as long as the promotion potential does not exceed that of the position previously held. Trial Tr. 333:22-334:12. There are, however, no position descriptions, classifications, or any other document to support the contention that the promotion potential does not exceed that of the previously held position. Trial Tr. 334:13-24. Mr. Branch further alleges that the increase in Ms. Navarro's duties as a result of this litigation is indicative of the Government's willful violation of the EPA.[1] As a result, Mr. Branch is asking for the pay differential between Ms. Navarro's pay and his pay. Trial Tr. 350:21-23.

Conversely, the Government argues that Mr. Branch failed to bear his burden of proof to show that he "is being singled out and paid less because he is a man." Trial Tr. 351:10-12. According to the Government, two men were also reassigned from supervisor to lead. Trial Tr. 352:20. Furthermore, Mr. Branch's assertions that he is being discriminated on the basis of his gender lack credence because there are other men and women who are LMR Specialists. Trial Tr. 367:14-16. That is, the fact that all the LMR Specialists are paid less than Ms. Navarro shows that the pay differential is due to reasons other than sex. *Id.*

The Government further contends that no EPA violation has occurred because Ms. Navarro does not perform the same tasks as Mr. Branch. Trial Tr. 360:19-361:3. Furthermore, the Government argues that pay retention would have forced them to keep Ms. Navarro in the

---

[1] As the Court does not find a violation of the EPA these arguments are dismissed as moot.

same grade. Trial Tr. 357:16-21. Alternatively, the Government asserts that the re-assignment could have been established to prevent Ms. Navarro from appealing the decision to remove her from the supervisory position. Trial Tr. 358:17-20.

In addition, the Government presented alternative arguments that demonstrate that its actions fell under two of the four exceptions to the EPA. These two are that it was based on a merit system and that it was based on a reason other than sex. Def.'s Mem. 26.[2] And lastly, the Government asserts that Mr. Branch failed to prove that the Government willfully breached the EPA, so a two-year statute of limitations bars a portion of Mr. Branch's claims.[3] Trial Tr. 369:9-15.

The Court will now turn to the two elements that Mr. Branch must prove in order to establish an EPA violation: (1) "past or present discrimination based on sex," *Yant v. United States,* 588 F.3d 1369, 1374 (Fed. Cir. 2009), and (2) that Mr. Branch "performed work equal in skill, effort and responsibility" to that of a female comparator. *See*; *Moorehead v. United States*, 84 Fed. Cl. 745, 747 (2008).

**A.  The Discrimination was Not Based on Sex**

In alleging that the pay disparity between Mr. Branch and Ms. Navarro violates the EPA, Mr. Branch must first demonstrate that the discrimination was based on gender. In this case, he has failed to do so. Mr. Branch is one of ten GS 13 LMR Specialists, six of whom are female. Joint Stip. ¶¶ 3-6. This means, that more women are affected by this alleged pay disparity than men. Moreover, these women cannot bring an action under the EPA to challenge the pay disparity because of their gender. This leads to, what the Government terms, an "absurd result." Def.'s Mem. 17.

Furthermore, the Government has shown that there were other male supervisors who were re-assigned as Leads and who were able to retain their pay grade. Trial Tr. 226:5-227:21 (Chapin). Mr. Branch has not shown that the Government's decision to retain Ms. Navarro on a GS-14 pay scale was due to her gender. In fact, the Government presented evidence that had Ms. Navarro not been re-assigned as Lead but had been re-assigned as a LMR Specialist, the Government would have been required to retain her pay scale for two years following the conversion. Trial Tr. 230:4-15 (Chapin); 5 U.S.C. § 5363. Thus, there is nothing on the record to support Mr. Branch's allegations that the pay disparity between him and Ms. Navarro is based on gender.

---

[2] For the reasons stated below, the Court finds that the Government did not violate the EPA, and, accordingly, dismisses these alternative arguments as moot.

[3] As stated in footnote one, the Court finds that the Government did not violate the EPA, and, thus, dismisses this argument as moot.

**B. Ms. Navarro did not Perform Similar Duties as Mr. Branch**

Mr. Branch has seemed to show that a number of Ms. Navarro's additional duties are cosmetic or added for the purposes of this litigation. However, Mr. Branch has not met his burden of proof that that there was no significant difference between their jobs. The burden of proof is on the Plaintiff. Mr. Branch has raised legitimate questions as to the job disparity between Ms. Navarro and himself. However, the evidence showed that Ms. Navarro had additional duties such as approving leave, updating disciplinary letters, and having an input on performance evaluations. Even if Ms. Navarro does not spend a lot of time performing these tasks, Mr. Branch has failed to show that these tasks are not sufficient to differentiate Ms. Navarro's duties from his. *See Marshall,* 605 F.2d 191, 195 (5th Cir. 1979). Accordingly, Mr. Branch has not met his burden that there is no significant difference.

**IV.     Conclusion**

For the reasons set forth above, the Court finds that the Government did not violate the provisions of the EPA and **DISMISSES** the case. Therefore, the question regarding the applicable statute of limitations is **DISMISSED AS MOOT**. The Clerk is directed to **DISMISS** the case and enter judgment accordingly. Each party to bear its own costs.

**It is so ORDERED.**

s/ Loren A. Smith<br>
LOREN A. SMITH,<br>
Senior Judge